UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
_____
                                )
MARGARET HOLBROOK and           )
ROBERT HOLBROOK, JR,            )
                                )
                Plaintiffs,     )
                                )       CIVIL ACTION
        v.                      )       NO. 20-10671-WGY
                                )
BOSTON SCIENTIFIC CORPORATION,  )
                                )
                Defendant.      )
                                )
_____
```

YOUNG, D.J.                                September 16, 2020

**MEMORANDUM AND ORDER**

## I.   INTRODUCTION

Margaret and Robert Holbrook (the "Holbrooks") filed this
lawsuit against Boston Scientific Corporation ("Boston
Scientific"), alleging that Ms. Holbrook was injured by defects
in a pelvic mesh product, the Solyx, which Boston Scientific
produced.  Compl. ¶¶ 7, 61-62, ECF No. 1.  A medical doctor in
Louisiana implanted a Solyx mesh in Ms. Holbrook in May of 2016.
Compl. ¶¶ 33, 58-59.  This same doctor surgically removed the
Solyx mesh in November of 2018, and found that the mesh had
eroded.  Compl. ¶ 61, ECF No. 1.  The Holbrooks claim that
Boston Scientific acted negligently in developing and marketing
the Solyx, and breached warranties as to its safety, resulting

in injuries to Ms. Holbrook and a loss of consortium.  Compl. ¶¶ 70-104.

Boston Scientific moved to dismiss the complaint, Boston Scientific's Mot. Dismiss Compl., ECF No. 5, arguing that the Holbrooks' claims were untimely under Louisiana's statute of prescription and precluded by the Louisiana Product Liability Act (the "Liability Act"), Def. Boston Scientific's Mem. Law. Supp. Mot. Dismiss ("Def.'s Mem. Mot. Dismiss") 1, 11-13, 13-22, ECF No. 6.  This Court granted Boston Scientific's motion, dismissing the Holbrooks' complaint without prejudice to the Holbrook's filing for leave to file an amended complaint within 30 days.  ECF No. 20.  The Holbrooks have now moved for leave to file an amended complaint, Pls.' Mot. Leave File Am. Compl. Fed. R. Civ. P. 15(a)(2), and filed a proposed amended complaint. Mot. Leave, Ex. 1, Am. Compl. 1-24, ECF No. 22-1.  Boston Scientific has filed a memorandum in opposition.  Def. Boston Scientific Corporation's Opp'n Pls.' Mot. Leave File Am. Compl. ("Def.'s Opp'n"), ECF No. 24.

## II. ANALYSIS

Boston Scientific argues that the Holbrooks' proposed amended complaint remains time-barred and fails to state a claim under the Liability Act.  Def.'s Opp'n 1-2, 4-19.  Therefore, Boston Scientific contends, the Holbrooks' motion for leave to amend should be denied as futile.  Id.

This Court concludes that the plaintiffs' proposed amended complaint is sufficient as to all their claims, with the exception of the demand for attorney's fees and punitive damages.  Accordingly, the proposed amended complaint merits granting the Holbrooks leave to file.

A party may amend its pleading by leave of the court, which should be "freely give[n] . . . when justice so requires."  Fed. R. Civ. P. 15(a)(2).  A court "enjoys significant latitude in deciding whether to grant leave to amend."  U.S. ex rel. Gagne v. City of Worcester, 565 F.3d 40, 47 (1st Cir. 2009).  Generally, it ought grant such leave unless an amendment was made in bad faith, was unduly delayed, or would prove futile.  Foman v. Davis, 371 U.S. 178, 182 (1962).

An amended complaint is futile if " the relevant statute of limitations has elapsed," Brooks v. Citizens Bank of Massachusetts, 2020 WL 837375 at *1 (D. Mass. Feb. 20, 2020)(Sorokin, J.), or, "the pined-for amendment does not plead enough to make out a plausible claim for relief," HSBC Realty Credit Corp. (USA) v. O'Neill, 745 F.3d 564, 578 (1st Cir. 2014).  To assess futility, a court applies the same legal standard as that of a motion to dismiss for failure to state a claim, Glassman v. Computervision Corp., 90 F.3d 617, 623 (1st Cir. 1996); that is, whether the plaintiff has plead "enough facts to state a claim to relief that is plausible on its face,"

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A
plaintiff need not prove that he or she will prevail at trial
but must establish more than simply a possibility of entitlement
to relief.  See García-Catalán v. United States, 734 F.3d 100,
102-03 (1st Cir. 2013).

### A.   Timeliness of the Complaint

Boston Scientific contends that the Holbrooks' complaint is
governed by the prescription statute of Louisiana -- the state
where Ms. Holbrook was implanted with the Solyx mesh, and, where
the Holbrooks reside.  See Def.'s Opp'n 1-2, 5-13; La. Civ. Code
Ann. art. 3492. [1]  Under that one-year prescription statute, the
Holbrooks' claims would be untimely and their motion to amend
would be futile.

Instead, this Court concludes that Massachusetts's three-
year statute of limitations applies to this action.  See Mass.
Gen. Laws. ch. 260, § 2A. [2]  Because the Holbrooks filed their

---

[1]   Louisiana's prescription statue provides in relevant part
that "[d]elictual actions are subject to a liberative
prescription of one year.  This prescription commences to run
from the day injury or damage is sustained."  La. Civ. Code Ann.
art. 3492.  "[C]laims under the Louisiana Products Liability
Act" are "delictual actions," and typically "are subject to a
one year prescriptive period" under Louisiana law.  Bottinelli
Real Estate, L.L.C. v. Johns Manville, Inc., 288 So.3d 179,
2019-0619 (La.App. 4 Cir. 12/27/19).

[2]   "Except as otherwise provided, actions of tort, actions
of contract to recover for personal injuries, and actions of

complaint within that longer three-year period, the Holbrooks'
claims are not time-barred.

### 1.   Choice of law Analysis

This Court sitting in diversity must apply the choice of
law rules of the forum state, namely Massachusetts.  See Klaxon
Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 496 (1941).
"Massachusetts courts apply a functional approach to choice-of-
law issues that involve conflicting statutes of limitations."
Elliston v. Wing Enterprises, Inc., 146 F. Supp. 3d 351, 354 (D.
Mass. 2015) (Saylor, J.), citing New England Tel. & Tel. Co. v.
Gourdeau Constr. Co., 419 Mass. 658, 660-63 (1995) (Gourdeau).
Under this approach, "the forum will apply its own statute of
limitations permitting the claim unless:(a) maintenance of the
claim would serve no substantial interest of the forum; and (b)
the claim would be barred under the statute of limitations of a
state having a more significant relationship to the parties and
the occurrence." Gourdeau, supra at 660 n.1, quoting Restatement
(Second) of Conflict of Laws § 142 (1971) (Supp. 1989).

The focus of this choice of law analysis is on the
timeliness of the action, rather than the underlying claim.  See
Kahn v. Royal Ins. Co., 429 Mass. 572, 574-75, (1999) ("we focus

---

replevin, shall be commenced only within three years next after
the cause of action accrues."  Mass. Gen. Law. ch. 260, § 2A.

on the statute of limitations issue, and not on the underlying tort"). When weighing the interests of the forum and others staets, Massachusetts courts focus on the overarching choice of law principles set forth in Section 6 of the Restatement. Gourdeau, supra at 660 n.2. Considering these factors, a Massachusetts court may apply the statute of limitations of another state if that state has "the dominant interest in having its own limitations statute enforced." Nierman v. Hyatt Corp., 441 Mass. 693, 696–98 (2004)[3].

In their amended complaint, the Holbrooks plausibly plead that Massachusetts has a substantial interest in the timeliness of their product liability claims. Not only do they assert that Boston Scientific is headquartered within Massachusetts, they also claim that all of the allegedly wrongful actions that underly the Holbrooks' claims occurred in Massachusetts. See In re Fresenius Granuflo/NaturaLyte Dialysate Prod. Liab. Litig.,

---

[3] Among the relevant factors are: "(a) the needs of the interstate and international systems,(b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law,(f) certainty, predictability and uniformity of result, and(g) ease in the determination and application of the law to be applied." New England Tel. & Tel. Co. v. Gourdeau Const. Co., 419 Mass. 658, 661 (1995), citing Restatement (Second) of Conflict of Laws § 6 (1971) (Supp. 1989).

76 F. Supp. 3d 294, 307 (D. Mass. 2015) (Woodlock, J.)
("Massachusetts courts have . . . considered the location of
events that constitute the alleged wrongdoing as essential for
the substantial interest analysis") (Fresenius).  The Holbrooks
allege that "all the decisions regarding designing, developing,
warnings, warranties, packaging and labeling were made in
Massachuetts," "[t]he negligence and wrongdoing of Defendant
came from acts in Massachusetts, the product developed in as was
done in Massachusetts, and the defective device was put into the
stream of commerce in Massachusetts."  Am. Compl. ¶2.  Faced
with similar claims, courts have concluded that Massachusetts'
statute of limitations should govern.  See, e.g. Fresenius, 76
F. Supp. 3d at 306-308 (Massachusetts statute of limitations
applied where defendant made decisions "regarding the design,
marketing, sale, distribution, labeling, instructions and
warnings—or decisions not to provide particular instructions and
warning" in Massachusetts).

Applying Massachusetts' statute of limitations to this case
would further its "significant interest" in seeing a resident
defendant, like Boston Scientific, "be held accountable for its
conduct, which took place in Massachusetts, and which allegedly
caused the plaintiff's injury."  Cosme v. Whitin Mach. Works,
Inc., 417 Mass. 643, 649 (1995).  Massachusetts "public policy
demands that the burden of accidental injuries caused by

products intended for consumption be placed upon those who market them ... and that the [user] of such products is entitled to the maximum of protection at the hands of someone, and the proper persons to afford it are those who market the products." See id. at 648.

Although Louisiana also has an interest in having its stricter statute of limitations applied to this case, that interest is not so obviously dominant that it warrants setting aside Massachusetts' statute of limitations.  See Def.'s Opp'n 5-11.  Boston Scientific contends that Louisiana is the state with the closest connection to the Holbrook's claims because it is the state in which they reside and where Ms. Holbrook was implanted with the Solyx mesh.  See Def.'s Opp'n 9-12.  In product liability claims like this, however, the location of the injury "is only one aspect of the claim."  Elliston, 146 F. Supp. 3d at 354.  The Court also recognizes that Louisiana's unique statute of prescription and the Louisiana Product Liability Act reflect an interest in limiting liability for certain tort actions.  See, e.g. Eaglin v. Eunice Police Dep't, 2018 WL 3154744, at *6 (La. 2018).  (Louisiana has "long recognized significant differences exist between common law statutes of limitations and the civil law concept of prescription").  Nonetheless, that interest is less compelling where no Louisiana defendant faces liability and no Louisiana

court must entertain the Holbrooks' claims.  Cf. <u>Cosme</u>, 417
Mass. at 648-649 (assessing Connecticut's diminished interest in
having statute of limitations applied).  At this early stage of
the proceedings, Boston Scientific has not established that
Louisiana's interest in the timeliness of this action warrants
applying its strict statute of prescription.[4]

Considering Massachusetts' substantial interest in the
timeliness of this case, and the competing interests of
Louisiana, the use of Massachusetts statute of limitations is
appropriate for the Holbrook's claims.

### 2.   Application of the Statute of Limitations

Under Massachusetts' applicable three-year statute of
limitations, the Holbrook's complaint was timely.  Based on the
complaint, the apparent triggering date for the three-year
limitations period was November 26, 2018, when Ms. Holbrook's
medical doctor "found that the mesh had eroded."  Def.'s Opp'n
12.  See <u>Koe</u> v. <u>Mercer</u>, 450 Mass. 97 (2007); <u>Fresenius</u>, 76 F.
Supp. 3d at 309 ("The three-year statute of limitations period
for tort-based claims does not begin to run until a plaintiff is
aware or should have been aware both of the injury and that the

---

[4]   "This is a fact-specific inquiry," and "[i]t is possible
that after discovery the relevant facts in the several cases at
issue may look different."  <u>In re Fresenius Granuflo/NaturaLyte
Dialysate Prod. Liab. Litig.</u>, 76 F. Supp. 3d 294, 307-08 (D.
Mass. 2015) (Woodlock, J.).

defendant caused the injury"). The Holbrooks filed this
complaint on April 6, 2020, well within three years from when
the degradation of the Solyx mesh was allegedly discovered.
Accordingly, the Holbrook's complaint is not barred by the
statute of limitations and their motion for leave to amend is
not futile on this ground.

**B.   Claims under the Louisiana Product Liability Act**

Boston Scientific further argues that the Holbrooks'
amended complaint fails to state a claim under the Liability
Act, Def.'s Opp'n 13-19, and, because the Holbrooks'
consortium claim is derivative of their claims under the
Liability Act, that claim similarly fails. Def.'s Opp'n 19.
Therefore, Boston Scientific asserts, the Holbrook's amended
complaint would be subject to dismissal and their motion for
leave to amend should be denied as futile.

Under Louisiana law, the Liability Act "establishes the
'exclusive theories of liability for manufacturers for damage
caused by their products. A claimant may not recover from a
manufacturer for damage caused by a product on the basis of any
theory of liability that is not set forth in the Chapter.'"
Grenier v. Med. Eng'g Corp., 99 F. Supp. 2d 759, 761 (W.D. La.
2000), aff'd, 243 F.3d 200 (5th Cir. 2001), citing La. Rev.
Stat. § 9:2800.52. To establish a claim under the Liability
Act, a plaintiff must show that "(1) the defendant manufactured

the product; (2) the plaintiff's damage was proximately caused by a characteristic of the product; (3) the characteristic made the product unreasonably dangerous in its construction (manufacture), design, warning, or express warranty; and (4) the plaintiff's damage resulted from a reasonably anticipated use of the product." See Jefferson v. Lead Indus. Ass'n, Inc., 930 F. Supp. 241, 243 (E.D. La. 1996), citing La. Rev. Stat. § 2800.54.

Here, the Holbrooks assert that Boston Scientific's Solyx mesh was "unreasonably dangerous" in three respects: its design, due to Boston Scientific's failure to issue warnings, and due to Boston Scientifc's breach of an express warranty. Am. Compl. ¶¶ 70-104. The Court holds that the amended complaint states a claim under each of these theories of the Liability Act, and therefore, those claims would not be subject to dismissal. For the same reason, Boston Scientific's opposition to the Holbrook's consortium claim is also unavailing.

**1.   Design Defect**

The Holbrooks first claim that the Solyx mesh was unreasonable dangerous due to a design defect. Am. Compl. ¶¶ 70-78. To state a claim for a design defect under the Liability Act, a plaintiff must claim that at the time the product left the manufacturer's control, "(1)'an alternative design existed for the product that was capable of preventing the alleged damage,' and (2) 'the alternative design would prevail in a

traditional risk/utility analysis.'" <u>Grenier</u> v. <u>Med. Eng'g</u> <u>Corp</u>., 99 F. Supp. 2d 759, 763 (W.D. La. 2000), citing La. Stat. Ann. § 9:2800.56.

Boston Scientific argues that the Holbrooks' design defect claim fails because their amended complaint does not sufficiently identify an alternative design for the Solyx mesh. Def.'s Opp'n 14-15.  It contends that the amended complaint neither points to any specific alternative design for a mesh, nor explains how the benefits of that design would outweigh the burden on Boston Scientific of implementing that design.  Def.'s Opp'n 14-15.  Instead, Boston Scientific argues that the complaint merely "alleges that some alternative design exists" and "regurgitates the risk/utility prong of a design defect claim." Def.'s Opp'n 14-15.

When assessing a design defect claim at the motion to dismiss stage, courts are mindful that "it is almost impossible to specifically plead an alternative design without the benefit of discovery and expert consultation." <u>Brooks</u> v. <u>Amgen, Inc</u>., 2019 WL 507491, at *5 (M.D. La. Feb. 8, 2019).  Nonetheless, a complainant must do more than merely claim that some alternative design exists, see <u>Lewis</u> v. <u>Baxter Int'l Inc</u>., 2017 WL 661324, at *4 (E.D. La. Feb. 17, 2017) or identify alternative but dissimilar products, see <u>Theriot</u> v. <u>Danek Med., Inc</u>., 168 F.3d 253, 255 (5th Cir. 1999). At the very least, a complaint must "alleg[e] an alternative design

in general terms, including the general characteristics of the alternative design." Baudin v. AstraZeneca Pharm. LP, 413 F. Supp. 3d 498, 506 (M.D. La. 2019).

Here, the amended complaint identifies two alternative designs of a pelvic mesh: "devices made out of biological material and those inserted through the abdomen." Am. Compl. ¶ 72. The Holbrooks also identified the particular health issues associated with the Solyx and alleged that the alternative designs "have been shown to have less risk." Am. Compl. ¶¶ 72-73. More specifically, they claim that the material of which the Solyx is composed "promotes a negative immune response in a large subset of the population." Am. Compl. ¶ 9. At least implicitly, therefore, the complaint alleges that the Solyx mesh is more harmful than other products that are composed of another material, such as biological material. See Brooks, 2019 WL 507491, at *5 ("barebones" allegations sufficient where plaintiff "at least implicitly pled an alternative design").

The Holbrooks have likewise pled that the utility of the Solyx mesh design is outweighed by the risk of harm it poses to patients. Specifically, they claim that the "likelihood that the product's design, as manufactured, would cause damages like Plaintiff Holbrook sustained in this case, and the gravity of those damages, outweighed the burden on Defendants of adopting a safer alternative design." Am. Compl. ¶ 73. In support, the Holbrooks

point to a 2011 Joint Committee Opinion of the American College

of Obstetricians and Gynecologists  and the American

Urogynecologic Society which states that "[p]elvic organ prolapse

vaginal mesh repair should be reserved for high-risk individuals in

whom the benefit of mesh placement may justify the risk."  Am.

Compl. ¶ 19.  A contemporaneous FDA white paper concluded that

mesh products "are associated with serious adverse events . . .

compounding the concerns regarding adverse events are

performance data that fail to demonstrate improved clinical

benefit over traditional non-mesh repair."  Am. Compl. ¶ 22.

These factual allegations bolster the Holbrooks' contention that

"the adverse effect of the alternative design, if any, on the

product's utility is negligible."  Am. Compl. ¶ 73.

At the motion to dismiss stage of a defective design claim,

the Holbrooks factual allegations are sufficient to "'give the

defendant fair notice of what the . . . claim is and the grounds

upon which it rests.'" Boutte v. Stryker Biotech, LLC, 67 F.

Supp. 3d 732, 737 (M.D. La. 2014), quoting Twombly, 550 U.S. at

555.  Therefore, they have pled a claim for a design defect

under the Liability Act.

## 2.  Failure to Warn

The Holbrooks' second claim under the Liability Act is that

the Solyx mesh was unreasonably unsafe because it was not

accompanied by adequate warnings.  Am. Compl. 19-22.  "To

successfully maintain a failure-to-warn claim under the LPLA, a plaintiff must demonstrate that the product in question has a potentially damage-causing characteristic and that the manufacturer failed to use reasonable care to provide an adequate warning about this characteristic." Guidry v. Janssen Pharm., Inc., 206 F. Supp. 3d 1187, 1198 (E.D. La. 2016). "In claims involving drugs or medical devices which are dispensed by a physician, Louisiana law applies the learned intermediary doctrine." Guidry v. Aventis Pharm., Inc., 418 F. Supp. 2d 835, 840 (M.D. La. 2006). Under this learned intermediary doctrine, a plaintiff must establish each of two prongs to a failure to warn claim: (1) "that the defendant failed to warn or inadequately warned the physician of a risk associated with the product that was not otherwise known to the physician," and, (2) "that this failure to warn the physician was both a cause in fact and the proximate cause of the plaintiff's injury." Id. at 840-41.

Boston Scientific asserts that the amended complaint fails to plead either prong under the learned intermediary doctrine. Def.'s Opp'n 15-18. It argues that the Holbrooks merely identify potential complications related to the Solyx mesh and assert conclusory allegations that Boston Scientific failed to provide sufficient warnings regarding those complications. Def.'s Opp'n 16-17. Boston Scientific also contends that the

amended complaint itself shows that the scientific community was otherwise aware of the risks associated with the Solyx mesh several years before Ms. Holbrook's physician opted to employ it.  Def.'s Opp'n 17.  Therefore, it claims, the Holbrooks cannot plausibly plead that any failure to give additional warnings was a causal factor of her injuries.  Def.'s Opp'n 17-18, citing Thomas v. Bracco Diag., Inc., 2020 WL 1016273, at *4 (W.D. La. Feb. 27, 2020) (failure to warn claim fails where "an entire medical community was well aware of the alleged risk of which Plaintiff complains").

In both respects, Boston Scientific's argument misses the mark.  The amended complaint alleges that Boston Scientific "under reported and continues to underreport information about the propensity of the Solyx to fail and cause injury and complications."  Am. Compl. ¶ 44.  It goes on to lay out nineteen different warnings which should have been given to the Holbrooks and their physician about the risks associated with the Solyx mesh, Am. Compl. ¶ 82, and the complaint asserts that, had the Holbrooks' physician had received those warnings, she would have suggested alternative treatments and Ms. Holbrook would not have assented to the implantation of the Solyx.  Am. Compl. ¶ 83.

Thomas, on which Boston Scientific relies, is inapposite. There, the plaintiff's complaint alleged that the medical

community had been aware of the specific complications he
suffered from taking a medication for nearly thirty years before
he was ever administered that medication.  Thomas, 2020 WL
1016273, at *4.  In this case, the Holbrooks contend that the
Food and Drug Administration, and other organizations, warned
that the Solyx mesh could cause complications when used to treat
certain conditions from which Ms. Holbrook did not suffer.  Am.
Compl. ¶¶ 18-23.  They do not claim, however, that the medical
community was similarly alerted that the Solyx mesh could cause
complications when used to treat Ms. Holbrook's condition --
stress urinary incontinence.  Instead, the Holbrooks assert that
"the data regarding the magnitude and frequency of these known
risks are not as developed" in the stress urinary incontinence
context, and that the Food and Drug Administration called for
additional studies into potential complications.  Am. Compl. ¶¶
26-27.  Unlike Thomas, the Holbrooks' physician was not already
on high alert about the risks that the Solyx mesh posed to Ms.
Holbrook in the absence of specific warnings from Boston
Scientific.

For these reasons, the Court rules that the amended
complaint adequately pleads all elements of a failure to warn
learned intermediary claim under the Liability Act.  Cf. Baudin,
413 F. Supp. 3d at 509-10.

3.  **Express Warranty**

The Holbrooks' third and final claim under the Liability Act is that Boston Scientific breached express warranties regarding the Solyx mesh. "To state a claim for breach of express warranty, the plaintiff must (1) allege the content of the warranty and (2) explain how the warranty was untrue. Robertson v. AstraZeneca Pharmeceuticals, LP, 2015 WL 5823326, at *5 (E.D. La. Oct. 6, 2015). See, La. Stat. § 9:2800.58.[5] "The complaint need not 'identify specific language offered by a manufacturer,' but it must 'specify the warranty in question' and explain why the warranty was untrue." Id., quoting Becnel v. Mercedes-Benz USA, LLC, 2014 WL 4450431, at *4 (E.D. La. Sept. 10, 2014).

Boston Scientific argues that the amended complaint fails to state an express warranty claim because it does not specifically allege the warranty in question, how it was false, or how the Holbrooks or their physician were induced to rely on that warranty. Def.'s Opp'n 18.

Although this Court observes that the amended complaint's factual allegations are sparse, it nonetheless concludes that

---

[5] An "express warranty" under the Liability Act is "a representation, statement of alleged fact or promise about a product or its nature, material or workmanship that represents, affirms or promises that the product or its nature, material or workmanship possesses specified characteristics or qualities or will meet a specified level of performance. 'Express warranty' does not mean a general opinion about or general praise of a product." La. Stat. Ann. § 9:2800.53.

the Holbrook's have stated a claim for breach of an express
warranty.  The amended complaint alleges that, "[f]or years,
Massachusetts company Boston Scientific omitted and downplayed
the risks, dangers, defects, and disadvantages of the Solyx" and
"represented to Ms. Holbrook and her physicians that the Solyx
was safe to use to correct stress urinary incontinence knowing
that the Solyx was defective and capable of causing the injuries
described herein."  Am. Compl. ¶¶ 40, 87.  Throughout the
complaint, the Holbrooks also describe the complications
associated with the Solyx mesh that caused it to not conform to
Boston Scientific's representations.  Am. Compl. ¶¶ 41-42, 51-
54.  Cf. Baudin v. AstraZeneca Pharm. LP, 413 F. Supp. 3d 498,
511-12 (M.D. La. 2019) (complaint stated claim where plaintiff
accompanied express warranty with specific allegations regarding
scientific literature regarding connection between medication
and side effects, defendants' knowledge of the same, and how the
product was unsafe).  The complaint further alleges that Boston
Scientific made these representations "with the intent that Ms.
Holbrook and her physicians rely upon such misrepresentations
about the safety and efficacy of the Solyx. Ms. Holbrook and her
physicians did reasonably rely upon such representation."  Am.
Compl. ¶¶ 89.

Since the Holbrooks have pleaded "'factual content that
allows the [c]ourt to draw the reasonable inference that the

defendant is liable for the misconduct alleged,'" they have sufficiently stated an express warranty claim. <u>Boutte v. Stryker Biotech, LLC</u>, 67 F. Supp. 3d 732, 738-39 (M.D. La. 2014), quoting <u>Ashcroft</u> v. <u>Iqbal</u>, 556 U.S. 662, 129 S. Ct. 1937, 1940, 173 L. Ed. 2d 868 (2009).

### C.   Attorneys' Fees and Punitive Damages

In one respect, however, the Holbrook's complaint fails to conform to the Liability Act.  As Boston Scientific rightly notes, the Liability Act does not permit a complainant to recover punitive damages or attorneys' fees.  "Under Louisiana law, punitive or other 'penalty' damages are not allowable unless expressly authorized by statute." <u>Int'l Harvester Credit Corp. v. Seale</u>, 518 So. 2d 1039, 1041 (La. 1988).  "The [Liability Act], which specifically limits those claims which can be made against a manufacturer for use of its product by a consumer provides the exclusive theory of liability available against a manufacturer and does not authorize punitive damages." <u>Bladen</u> v. <u>C.B. Fleet Holding Co</u>., 487 F. Supp. 2d 759, 770 (W.D. La. 2007).  Nor does the Liability Act include attorneys' fees within its statutory definition of allowable damages.  See La. Stat. Ann. § 9:2800.53 ("Attorneys' fees are not recoverable under this Chapter"); <u>Chevron USA, Inc</u>. v. <u>Aker Mar., Inc</u>., 604 F.3d 888, 900-901 (5th Cir. 2010) (attorneys' fees are unavailable under the Liability Act).  Accordingly, in so far as

the amended complaint seeks attorney fees and punitive damages,
that portion of the complaint is subject to dismissal and the
motion for leave to file it is denied.

## III. CONCLUSION

Because the Holbrooks' amended complaint states plausible
grounds for relief and is not time barred, this Court GRANTS
them leave to file their amended complaint, ECF No. 22, except
for its claim for attorneys' fees and punitive damages.

**SO ORDERED.**

/s/ William G. Young
WILLIAM G. YOUNG
DISTRICT JUDGE